SHIVERS, Judge.
Appellant, a recipient of Aid to Families with Dependent Children (AFDC) and food stamp benefits, was registered for the Work Incentive (WIN) program on February 23, 1987 as a mandatory participant. On April 9,1987, the Department of Health and Rehabilitative Services (HRS) sent a letter to appellant’s residential address which was also where she received her mail. The letter scheduled her for a WIN orientation on April 27, 1987. She did not keep this appointment or contact HRS. On April 30, 1987, HRS sent appellant a notice of failure to participate and rescheduled her for WIN orientation on May 6, 1987. She did not keep this appointment either.
At hearing, Judy Coleville, an HRS supervisor, testified that when discussing the case with appellant in September 1987, appellant remembered having an appointment *681 for May 6 and calling the WIN office to cancel because she had to go to court that day. Ms. Coleville further testified that there was no record of this contact by appellant.
Appellant testified that she did not receive any WIN notices and that she had been having difficulty receiving her mail. Appellant specifically denied receiving the notice concerning the May 6, 1987 appointment or contacting a WIN officer to reschedule that appointment.
Due to her failure to participate in the WIN program, HRS reduced appellant’s AFDC grant from $203.00 to $143.00 on June 10, 1987 effective July 1987. Also as a result of this failure, the food stamp unit, after correcting some procedural deficiencies, ultimately disqualified appellant’s household from being eligible to receive food stamps for August and September of 1987.
In her November 10, 1987 order, the hearing officer found that the appellant had known that she was enrolled in the WIN program. The hearing officer concluded that HRS was correct to impose AFDC sanctions and food stamp disqualification because the appellant failed to participate in the WIN program pursuant to Florida Administrative Code Rule 10C-1.-092.[1]
With respect to the food stamp disqualification, 7 C.F.R. section 273.7(g) (1987) required HRS, upon determining that the recipient had refused or failed without good cause to comply with the requirements of the WIN program, to disqualify the recipient for two months from the food stamp program which it did.
Section 273.7(g)(1) requires HRS to “determine whether good cause for the noncompliance exists, as discussed in paragraph (m) of this section.” Paragraph (m) gives examples of good cause such as illness. The statute, however, does not detail to what length an administrator must go to determine that good cause exists. An administrator’s inability to contact or otherwise evoke a good cause excuse from a recipient should not prevent the administrator from determining that no good cause exists. Otherwise a recipient, by simply remaining incommunicado could effectively circumvent one of the aims of the statute— to deter and punish unexcused failure to participate in the WIN program.
Once HRS determined that noncompliance was without good cause, it was required to provide appellant notice of adverse action as specified in 7 C.F.R. section 273.13 (1987). HRS did so by use of form 3050, which, as completed, indicates the action taken and the reason behind it, the period of disqualification, the right to hearing, an HRS contact point, the liability for overissuances, the availability of continued benefits and legal counsel, and so forth, as required by the statute. We find that good faith use and completion of this form, as was done in the instant case, meet the requirements of the statute. The hearing officer’s upholding of appellant’s HRS food stamp disqualifications is affirmed.
With respect to the grant reduction, 45 C.F.R. section 224.51 (1987) requires more from HRS administrators than does the food stamp program counterpart that similarly calls for sanctions against unexcused noncompliance with the WIN program.
There is no evidence that appellant overtly refused to participate in the WIN program. However we find appellant’s failure to respond to HRS correspondence implies a de facto refusal to participate under section 224.51(d)(2). This statute requires that where refusal to participate is implied, “the WIN sponsor shall send a notice setting an appointment for the individual to come to the WIN office and discuss the act or pattern of behavior in question.” To give effect to this provision, HRS cannot be able to proceed to a grant reduction before undertaking the mandated discussion with the recipient.
*682 HRS ostensibly excused appellant from missing her first WIN orientation appointment, rescheduled her for a later appointment which she also missed, and then sanctioned her for this. HRS actions here do not satisfy the statute. The statute does not permit a series of reschedulings that lead to sanctions when no appointment is kept; it requires HRS to send a notice setting an appointment to discuss noncompliance behavior. HRS’s sending of a letter and form 4134 scheduling and rescheduling appellant for WIN orientation does not constitute such notice under the statute. It does not indicate a willingness to discuss reasons for noncompliance.
These HRS actions, become particularly pointed in light of section 224.63(a) which requires its WIN staff “to exhaust efforts toward conciliatory resolution of disputes” before issuing notice of sanctions. From the record, it is apparent that the WIN staff did not meet this obligation. While understanding that WIN program resources were not unlimited, if section 224.-63(a) is to have any import, the WIN staff needed to demonstrate effort toward ascertaining whether there was any legitimacy to appellant’s noncompliance. Because the record does not show any such interaction between WIN staff and appellant we are constrained to conclude no effort toward conciliatory resolution was made. We reverse the hearing officer’s upholding of the HRS grant reduction.
AFFIRMED IN PART AND REVERSED IN PART.
BOOTH and THOMPSON, JJ., concur.

. Fla.Admin.Code Rule IOC-1.92, now 10C-1.-092, which established the basic requirement that AFDC recipients in Florida register for the WIN program, was repealed October 1, 1987, shortly .after the WIN orientation appointments and consequent sanction periods in this case.